DAVID A. PEARSALL, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

NEGLIGENCE — FAILURE OF RAILROAD COMPANY TO PROMULGATE SAFER RULES. Negligence cannot be imputed to a railroad company upon the sole ground that it has failed to adopt the same methods for operating its road at a crossing that other roads have in use, even if such methods are better or safer, if the method in use by the company is reasonably safe and has proved to be so, as the result of long experience.

*Pearsall* v. *N. Y. C. & H. R. R. R. Co.,* 112 App. Div. 904, reversed.

(Argued October 31, 1907; decided November 19, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 29, 1906, affirming a judgment in favor of plaintiff

entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. H. Cowie* for appellant. No negligence was shown on the part of defendant. (*Sisco* v. *N. Y. C. & H. R. R. R. Co.*, 145 N. Y. 296; *Kudik* v. *L. V. R. R. Co.*, 78 Hun, 492; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 468; *Barrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582; *Niles* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 58; *Moeller* v. *D., L. & W. R. R. Co.*, 55 App. Div. 636.)

*A. D. Jenney* for respondent. The finding of the jury upon the question of defendant's negligence in not promulgating safe and sufficient rules will not be disturbed upon this appeal. (*Martin* v. *Home Bank*, 160 N. Y. 199; *N. Y. B. N. Co.* v. *Hamilton Bank*, 180 N. Y. 293; *Post* v. *M. Ry. Co.*, 125 N. Y. 697; *Dowd* v. *N. Y., O. & W. R. R.*, 170 N. Y. 466; *Devoe* v. *N. Y. C. R. R. Co.*, 174 N. Y. 1; *McCoy* v. *N. Y. C. & H. R. R. R.*, 185 N. Y. 283.)

O'BRIEN, J. The plaintiff was seriously and permanently injured on the 12th of September, 1901, at about two o'clock in the morning of that day, by the derailing of the train upon which he was the engineer at a place called Eastwood, a few miles east of Syracuse, on the West Shore railroad, which constituted a part of the defendant's system. The train was westbound, a fast express, in charge of the plaintiff as engineer, and after crossing a bridge east of the point where the accident occurred was running at the rate of forty or fifty miles an hour. The primary cause of the derailment and consequent injury to the plaintiff was that a switch, connecting a crossover with the main passenger track on which the plaintiff's train was running at high speed, was not set or locked for the main track, but for the crossing.

The principal use and purpose of this diagonal crossing was to enable the defendant to transfer freight trains from the

West Shore road to the Central, and it led off in an easterly direction to the defendant's great yard at De Witt, where connection was made with the main track of the Central. The switch was usually kept set for this crossover track, as there was very heavy traffic upon it. If the switch at this crossing had been set for the main track, instead of for the crossing, the accident would not have happened. The defendant had a switchman at the crossing, whose business it was to change the switch for the main track when necessary, and to properly operate the semaphore signals, intended to give notice to trains on the main track when it was safe to go on and when there was danger. The plaintiff, when approaching the point where the accident occurred, did not himself look out from his engine in order to see whether the signals reported danger or safety, but left that duty to the fireman who reported to him that all was right. The plaintiff's reason for not looking out for himself was that he was rounding a curve at the time, and it being necessary that he should be on the right of the engine, the smokestack, locomotive, barrel of the engine and headlight obstructed his vision so that he could not see the danger signal on the semaphores until it was too late to stop the train. If the accident resulted from the blunder of the fireman in reporting to the plaintiff that all was right when danger was obvious, or from neglect on the part of the operator who had charge of the switch and the semaphore signals, they were co-servants for whose negligence the defendant is not liable, this being a common-law action. There was no claim that these men were incompetent, or that the switch or semaphores were improperly constructed, or located, or that there was any defect in the signals, or if there was that the defendant had notice of the defect in time to repair it or cure the defect. The trial court, in substance, so instructed the jury.

The finding of negligence cannot be supported by the proof on any of these features of the case. The defense of contributory negligence on the part of the plaintiff, in view of all the circumstances, the speed of the train, the condition of the track rounding the curve after a rain, the darkness of

the night and the assurance of the fireman that all was right, could not be ruled against the plaintiff as matter of law. We are inclined to think that the conduct of the plaintiff in failing to look out and observe the danger signals himself, instead of leaving that duty to the fireman, and in not stopping the train in time to avoid the accident, presented a question for the jury on the issue of contributory negligence.

The difficulty with the plaintiff's case is the absence of any proof of negligence on the part of the defendant. The burden was upon the plaintiff to give proof of some act or omission on the part of the defendant that caused or contributed to the accident. Since the decision of the court below was not unanimous, the question whether there was any evidence to support a finding of negligence on the part of the defendant is open for review in this court. The learned counsel for the plaintiff, as I understand his argument, rests that feature of his case entirely upon the neglect or omission of the defendant to enact and promulgate some rule that, if executed or followed, would have prevented such an accident; and that was the question which the learned trial judge submitted to the jury. It was left to the jury to say whether the rules in force by the defendant to guard against such accidents at the crossing in question were sufficient, or whether some other and better rule could not have been devised by the defendant in order to conduct its business at the point in question with a greater degree of safety.

The rule which the learned counsel for the plaintiff insists should have been adopted by the defendant is formulated in his printed argument as follows: That switches should be required " to be kept locked and set right for the main track at all times and that whenever it was necessary for any train to cross over across the main track to any side track or connection they may do so provided no passenger train be due and that a flagman be sent in both directions so as to properly protect any approaching train." There was evidence given to the effect that the same, or a similar rule, had been adopted and was in operation upon other railroads in this

state.   The defendant's answer to this contention is substantially this: That the track crossing the main track at this point was used much more than the main track and that its system of semaphore signals and the block system was equivalent to and safer than the system contended for by the plaintiff, and that different roads had different systems for the accomplishment of the same purpose of safety.   Comparing the rule contended for by the plaintiff with that in force by the defendant at the time of the accident it will be observed that its successful operation to avoid accidents is made to depend much more upon the vigilance and fidelity of the switchman and flagman and much less upon the fixed and permanent signals from the semaphores, known to the plaintiff and other employees as indicating danger or safety.

But the real question is, not whether the defendant adopted by its rules the safest plan that could be devised for guarding against accidents, but whether the rules in force were reasonably sufficient, when observed, to protect its servants from such accidents as resulted in personal injury to the plaintiff in this case.   The accident occurred for the reason that the switch was set right for the crossover track and wrong for the main track upon which the plaintiff's train was running. This situation could be known to all by a system of signals from the semaphores, which the rules prescribed.   A red light was a danger signal and a white light a signal of safety. On the night in question the semaphore on the main track east of the crossing displayed a red light and the semaphore for the crossover track displayed a white light, indicating that the switch was set right for the crossover and, hence, safety for trains on that track; but wrong for the main track and, hence, danger for the plaintiff's train.   It cannot be doubted that if these signals had been observed and acted upon by the defendant's servants the accident could not have happened, since it was the plaintiff's duty to stop his train until the danger was over by a proper adjustment of the switch for the main track.

While the semaphore on the main line was set against the plaintiff's train, the fireman claimed that the red glass on the

arm did not entirely cover the light, so that the real situation could not be plainly seen.   If it be true that the red glass did not entirely cover the white light the plaintiff was not misled, since he says that as soon as he saw the light he knew that it was a danger signal and instantly did all in his power to stop the train; that he had no doubt what the signal meant, and that it was his duty to stop at once.   Moreover, the defendant had another rule to the effect that "a signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal and the fact reported to the superintendent."

It is difficult to avoid the conclusion that the real cause of the accident was the blunder of the fireman in assuring the plaintiff that all was right at the switch, when the signals at the crossover track and on the main track showed the contrary. If, however, the semaphore on the main track did not on that occasion perform its full function of displaying the danger signal, it was not, so far as appears, in consequence of any defect in the appliance which the defendant knew, or should have known, but rather the fault of the operator at the switch. The crossover track connecting the main tracks of the West Shore with the main tracks of the Central at De Witt was of considerable length and was in constant use for the transfer of cars from one of these roads to the other, and it seems that the switch was kept set for that track and changed only for the main track when the signals called for the change.   It is difficult to see how the rule which it is said the defendant should have adopted could be an improvement upon the plan in use at the time of the accident.   But however that may be, it seems to us that the method adopted by the defendant for transacting its business at the point in question was reasonably safe, and that is all that can be required.   The defendant's officers could not anticipate any unusual danger from the plan when put into operation, especially in view of the fact that while it was in use for many years no accident had happened that could lead men of ordinary prudence to change it for the plan suggested.

Negligence cannot be imputed to the defendant upon the sole ground that it failed to adopt the same methods for operating its road at the point in question that some other roads had in use. Before it can be said that the plan of the other roads was the safest, we would have to know that the conditions were the same, and, moreover, that the result of experience was in favor of that method. So long as the defendant maintained a safe roadbed, rails and switches, employed competent co-servants, and had enacted reasonable rules for guarding and protecting the crossover and main tracks by the use of semaphores and signals, indicating plainly whether there was danger or safety, it discharged its whole duty to its employees. Even if it could be seen or found as a fact that the method in use by the other railroads mentioned in the record was better or safer, the master is not guilty of negligence for not discarding a plan which was reasonably safe, and had proved to be so as the result of long experience.

On the main issue in the case, which was the defendant's negligence in its failure to promulgate some other rule or plan of operating trains at the crossing, there was no evidence to submit to the jury. (*Sisco* v. *Lehigh & H. R. R. R. Co.*, 145 N. Y. 296; *Corcoran* v. *D., L. & W. R. R. Co.*, 126 N. Y. 673; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 468; affirmed, 153 N. Y. 664.)

The judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., VANN, WERNER and CHASE, JJ., concur; GRAY, J., not sitting; WILLARD BARTLETT, J., not voting.

Judgment reversed, etc.